## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FREEDOM COMMUNICATIONS HOLDINGS, INC., et al.,<br><br>               Debtors. | Chapter 11<br><br>Case No. 09-13046 (BLS)<br>(Jointly Administered) |
| GONZALEZ CLASS ACTION PLAINTIFFS<br><br>               Appellants<br><br>v.<br><br>FREEDOM COMMUNICATIONS HOLDINGS, INC., et al.,<br><br>               Appellees | 09 Civ. 825 (SLR) |

**OPPOSITION OF THE PREPETITION AGENT TO THE EMERGENCY MOTION OF THE GONZALEZ CLASS ACTION PLAINTIFFS FOR A LIMITED STAY PENDING APPEAL OF THE FINAL ORDER (I) AUTHORIZING USE OF PREPETITION LENDERS' CASH COLLATERAL UNDER 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION UNDER 11 U.S.C. §§ 361, 362, AND 363**

Of Counsel:

Richard Levin (*Pro Hac Vice* to be filed)
Robert H. Trust (*Pro Hac Vice* to be filed)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
rlevin@cravath.com
rtrust@cravath.com

Dated: November 12, 2009

Richard W. Riley (No. 4052)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
RWRiley@duanemorris.com

**Counsel for JPMorgan Chase Bank, N.A**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................6

BACKGROUND ...........................................................................................7

ARGUMENT ................................................................................................9

    A.    Standard of Review...................................................................10

    B.    The Plaintiffs Have Not Satisfied the Standard for a Stay Pending Appeal..........10

        (a).    The Plaintiffs Have Not Made a Strong Showing They Are Likely to Succeed on the Merits of Their Appeal .....................................................11

            (i)    The Adequate Protection Payments Are Appropriate...................11

            (ii)    The Finding that Adequate Protection Was Appropriate Was Not Clearly Erroneous ..................................................14

            (iii)    The Plaintiffs' Analysis of Timbers Is Flawed ..............................15

        (b).    The Plaintiffs Have Not Shown A Risk of Irreparable Harm....................16

        (c).    Granting the Stay Would Harm Other Interested Parties.........................19

        (d).    Denying the Motion is in the Public Interest .............................................20

    C.    A Stay of Only Paragraph 10(c) Would Unfairly Modify an Approved Agreement.................................................................21

    D.    If a Stay Is Granted, the Plaintiffs Must Post a Supersedeas Bond ......................22

CONCLUSION.................................................................................24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

de la Fuente v. DCI Telecommunications Inc., 269 F. Supp. 2d 237 (S.D.N.Y. 2003) ................22

Harris v. City of Philadelphia, 137 F.3d 209 (3d Cir. 1998) ........................................22

Hilton v. Braunskill, 481 U.S. 770 (1987)...................................................................10

In re 203 N. LaSalle St. Partnership, 190 B.R. 595 (N.D. Ill. 1995) .............................18

In re Adelphia Communications Corp., 361 B.R. 337 (S.D.N.Y. 2007) ...........18, 22, 23

In re Akron Thermal, Ltd. Partnership, 414 B.R. 193 (N.D. Ohio  2009)...............10, 20

In re ANC Rental Corp., No. 01-11220(MFW), 2002 WL 1058196 (D. Del. May 22, 2002) ..........................................................................................................16

In re Briggs Transp. Co., 780 F.2d 1339 (8th Cir. 1985)............................................14

In re Delta Res., Inc., 54 F.3d 722 (11th Cir. 1995) ....................................................13

In re Delta Transitional Home, 399 B.R. 654 (Bankr. E.D. Ark. 2009) .........................12

In re Doctors Hospital of Hyde Park, Inc., 376 B.R. 242 (Bankr. N.D. Ill. 2007) ........19

In re Finova Group, Inc., Bankruptcy No. 01-698-PJW, 2007 WL 3238764 (D. Del. Oct. 31, 2007) ..........................................................................................................18

In re Focus Media, 387 F.3d 1077 (9th Cir. 2004) ...............................................17, 18

In re Frascella Enterprises, Inc., 388 B.R. 619 (Bankr. E.D. Pa. 2008) ............16, 18, 19

In re Frye, No. 05-10004, 2005 WL 1285833 (Bankr. D. Vt. May 27, 2005).........19, 20

In re Genesis Health Ventures, Inc., 367 B.R. 516 (Bankr. D. Del. 2007)..............10, 11

In re Global Home Products, LLC, No. 06-10340-KG, 2006 WL 2381918 (D. Del. Aug. 17, 2006) ..........................................................................................................18

In re Irwin, 338 B.R. 839 (E.D. Cal. 2006).................................................................10

In re Johnson, No. 06-2110, 2006 WL 2348889 (3d Cir. Aug. 15, 2006)....................14

In re MagnaChip Semiconductor Fin. Co. LLC, Case No. 09-12008 (PJW) (Bankr. D. Del. July 13, 2009).................................................................................................13

In re Netia Holdings, 278 B.R. 344 (Bankr. S.D.N.Y. 2002) .......................................................17

In re North Plaza, LLC, 395 B.R. 113 (S.D. Cal. 2008).............................................................17

In re Polaroid Corp., No. Civ.A. 02-1353 JJF, 2004 WL 253477 (D. Del. Feb. 9, 2004)............11

In re Price, 370 F.3d 362 (3d Cir. 2004).................................................................................12, 15

In re R.H. Donnelley Corp., No. 09-11833 (KG) (Bankr. D. Del. June 25, 2009)......................13

In re Richmond Metal Finishers, Inc., 36 B.R. 270 (Bankr. E.D. 1984) .....................................20

In re Sharon Steel Corp., 918 F.2d 434 (3d Cir. 1990)...............................................................22

In re Shelly's, Inc., 87 B.R. 931 (Bankr. S.D. Ohio 1988) ..........................................................16

In re Spansion Inc., No. 09-10690 (Bankr. D. Del. May 15, 2009)..............................................13

In re Stearns Bldg., No. 98-1257, 1998 WL 661071 (6th Cir. Sep. 3, 1998) ...............................16

In re Swedeland Dev. Group, 16 F.3d 552 (3d Cir. 1994).............................................12, 14, 17

In re Tallygenicom, L.P., Bankr. No. 09-10266 (CSS), 2009 WL 734680 (D. Del. Mar 20, 2009) ............................................................................................................................11

In Re Trans World Airlines, Inc., No. 01-0056(PJW), 2001 WL 1820325 (Bankr. D. Del. Mar. 27, 2001)..........................................................................................................18

In re VVF Comme'ns Corp., 41 B.R. 546 (Bankr. D.D.C. 1984) ................................................20

In re Weinhold, 389 B.R. 783 (Bankr. M.D. Fla. 2008).........................................................22, 23

In re Weinstein, 227 B.R. 284 (B.A.P. 9th Cir. 1998) ..................................................................12

LNC Inv., Inc. v. First Fidelity Bank, 247 B.R. 38 (S.D.N.Y. 2000) ...........................................11

Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653 (3d Cir. 1991)..............10, 18

United Sav. Assoc. v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365 (1988)...............8, 15

United States. v. Whiting Pools, Inc., 462 U.S. 198 (1983) ..........................................................12

Wright v. Union Cent. Life Ins. Col, 311 U.S. 273 (1940)...........................................................11

**Statutes & Rules**

11 U.S.C. § 304...........................................................................................................................17

11 U.S.C. § 361.......................................................................................................................12, 15

11 U.S.C. § 362 .................................................................................................6, 15

11 U.S.C. § 363 .......................................................................................................6

11 U.S.C. § 506 .................................................................................................8, 12

Del. Bankr. L.R. 4001-2 ........................................................................................6

Fed. R. Bankr. 4001(b) ..........................................................................................6

Fed. R. Bankr. 8005 ........................................................................................17, 22

**Other Authorities**

3 Collier on Bankruptcy ¶ 361.02 (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2009) ...........................................................................................................12

49 C.J.S. Judgments § 502 ..................................................................................22

H.D. Harding, Power to Open or Modify "Consent" Judgment, 139 A.L.R. 421 ........................22

U.S. Const. Amend. V ..........................................................................................11

JPMorgan Chase Bank, N.A., as administrative agent (in such capacity, the **"Prepetition Agent"**), for itself and on behalf of a syndicate of senior secured lenders (collectively, the "**Prepetition Lenders**"), by and through undersigned counsel, hereby opposes the *Emergency Motion of the Gonzalez Class Action Plaintiffs for a Limited Stay Pending Appeal of the Final Order (I) Authorizing Use of Prepetition Lenders' Cash Collateral Under 11 U.S.C. § 363 and (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362, and 363* (the "**Motion**").[1] In support hereof, the Prepetition Agent respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Motion seeks the extraordinary relief of a stay pending appeal of one provision—Adequate Protection Payments—of the agreement approved by the Final Order authorizing use of Cash Collateral. The Motion is based upon supposed dangers to the position as unsecured creditors of the Gonzalez Class Action Plaintiffs (the "**Plaintiffs**") and on the theory that the Prepetition Lenders, as undersecured creditors, are not entitled to such payments during the Debtors' Chapter 11 cases. The Final Order addresses these issues, using an approach frequently employed in the Bankruptcy Court for the District of Delaware to obviate the very prejudice claimed by the Plaintiffs.

2.      In presenting their arguments, the Plaintiffs mischaracterize the record and the implications of denying a stay. The Plaintiffs assert that it is "undisputed" that the value of the Debtors' estate is increasing. This statement ignores the extensive evidence presented by the

---

[1] Capitalized terms that are not defined herein shall have the meanings set forth in the Debtors' Motion for Interim and Final Orders (I) Authorizing Use of Prepetition Lenders' Cash Collateral Under 11 U.S.C. § 363, (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362 and 363 and (III) Scheduling Final Hearing Under Fed. R. Bankr. Rule 4001(b) and Del. Bankr. L.R. 4001-2, filed with the Bankruptcy Court on September 1, 2009 (the "**Cash Collateral Motion**").

Debtors that the value of the Collateral is at risk of decreasing during the Cases.  The Plaintiffs claim that the Adequate Protection Payments will irreversibly deprive them of a source of recovery.  This argument fails to acknowledge that the Plaintiffs are not entitled to any of the property used for the Adequate Protection Payments.  The Prepetition Lenders, who have a lien on substantially all the Debtors' property, are receiving payment of their own Collateral.  In any event, as was stated at the Bankruptcy Court hearing on the Plaintiffs' motion for a stay pending appeal, a remedy could be fashioned if a court later concludes that the Prepetition Lenders were not entitled to the Adequate Protection Payments.  The harms predicted by the Plaintiffs are illusory and the circumstances warranting emergency relief are nonexistent.  Accordingly, the Motion should be denied.

## **BACKGROUND**

3.     On the Petition Date, the Debtors filed a motion in the bankruptcy court (the **"Bankruptcy Court"**) for approval of a consensual order authorizing use of the Prepetition Lenders' Collateral, including Cash Collateral, and providing an adequate protection package for the Prepetition Lenders.  At the "first-day" hearing, the Bankruptcy Court issued an interim order (the **"Interim Order"**) approving the agreement for the use of Cash Collateral, including the grant to the Prepetition Lenders of adequate protection in the form of replacement liens and periodic payments equal to non-default contractual interest under the Prepetition Credit Agreement plus certain fees and expenses.  Under the Interim Order, the Debtors also stipulated that the Prepetition Lenders have a valid, perfected, first-priority lien on substantially all the Debtors' assets, including cash.  Interim Order ¶¶ 5, 7; see also Final Order ¶¶ 5, 7.

4.     On October 14, 2009, the Bankruptcy Court held an evidentiary hearing on the Final Order.  The undisputed evidence at the hearing showed that (i) the Debtors required

the use of the Prepetition Lenders' Cash Collateral to continue to operate, (ii) the value of all of the Prepetition Lenders' Collateral, including the Cash Collateral, was at material risk of diminution during the Chapter 11 Cases, and (iii) the Debtors and the Prepetition Lenders negotiated in good faith and at arm's length for the cash collateral agreement, including the associated adequate protection package.  10/14/09 Hearing Tr. 56:13-59:18, 203:9-21.  The Bankruptcy Court also found the terms of the use of Cash Collateral to be fair and reasonable and to reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties.  Final Order ¶ 6(b).

   5.  The Plaintiffs nevertheless objected to the Final Order, asserting that payment of interest and fees to the Prepetition Lenders violated section 506(b) of the Bankruptcy Code, as interpreted by United Sav. Assoc. v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365 (1988).  The Bankruptcy Court overruled the objection as to the adequate protection payments set forth in paragraph 10(c) of the Final Order in part because it preserves the possibility that the payments would be recharacterized as a return of principal in the event that the Prepetition Lenders are undersecured.  The Bankruptcy Court noted "I'm satisfied right now that it is subject to recharacterization and this is not a hearing on valuation to determine whether or not the lender is or is not under secured …. I'm satisfied that the prospect or the option of recharacterization allows sufficient flexibility."  10/14/09 Hearing Tr. 205:5-13.  On October 15, 2009, the Court issued the Final Order and approved the agreement providing for use of Cash Collateral and payments to the Prepetition Agent and the Prepetition Lenders equal to non-default contractual interest and the reimbursement of certain fees and expenses, as provided in paragraph 10(c) of the Final Order.

6.    The following day, on October 16, 2009, the Plaintiffs filed a notice of appeal with respect to the Final Order.  Three days later, on October 19, 2009, the Plaintiffs filed an emergency motion before the Bankruptcy Court (the "**Emergency Motion**") requesting a limited stay pending appeal of paragraph 10(c) of the Final Order.  The Emergency Motion set forth an argument virtually identical to that in the Motion before the Court, claiming that the Adequate Protection Payments constituted impermissible interest payments to an undersecured creditor under Timbers and that the Plaintiffs would be irreparably harmed if the Adequate Protection Payments were allowed to be made.

7.    A hearing was held on the Emergency Motion on November 2, 2009.  At the hearing, the Bankruptcy Court denied the Emergency Motion, stating

> And I do believe that the re-characterization or reallocation provisions … are sufficient to afford me flexibility to deal with this issue as developments occur that would give us a more sufficient record to determine whether or not there is actual diminution and whether or not a party is or is not secured or under secured.

11/02/09 Tr. 33:23-34:6.  The Bankruptcy Court went on to note "[s]imilarly, that flexibility, I think eliminates the material prospect of irreparable harm to the movant." 11/02/09 Tr. 34:9-10.  The Bankruptcy Court also did not agree with the Plaintiffs' contention that the Adequate Protection Payments would be irreversible, noting " if the appeal proceeds and the appellant is successful, … a remedy can be fashioned".  11/02/09 Tr. 35:21-23.  Finally, the Bankruptcy Court concluded that the Debtors faced a risk of substantial harm if the stay were approved and found that the Plaintiffs had failed to establish a public interest supporting a stay.

## ARGUMENT

8.    The Court should deny the request for a stay pending an appeal of the Adequate Protection Payments portion (paragraph 10(c)) of the Final Order.  The Plaintiffs have

not satisfied the legal standard for a stay, and a stay would unfairly modify only one term of an agreed order over the objection of one of the parties.  In the alternative, if the Court were to grant the stay, the Plaintiffs should be required to post a supersedeas bond.

## A.      Standard of Review

9.      The Emergency Motion is not an independent motion to be reviewed *de novo*.  See In re Akron Thermal, Ltd. Partnership, 414 B.R. 193, 201-02 (N.D. Ohio 2009). Where, as here, "a bankruptcy court has ruled on the issue of a stay of its order pending appeal, the district court, sitting as an appellate court, reviews that decision for abuse of discretion." In re Irwin, 338 B.R. 839, 844 (E.D. Cal. 2006).  "An abuse of discretion arises when [a] court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000) (internal quotation omitted).  As we show below, the Bankruptcy Court correctly applied the law in denying the stay pending appeal and made no error, much less clear error, in its factual findings.

## B.      The Plaintiffs Have Not Satisfied the Standard for a Stay Pending Appeal

10.      A party moving for a stay pending appeal has the burden of showing the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991) (citing Hilton v. Braunskill, 481 U.S. 770 (1987)); see also In re Genesis Health Ventures, Inc., 367 B.R. 516, 520 (Bankr. D. Del. 2007).

11.    The court may deny a stay if the moving party fails to satisfy even one of these four factors. See, e.g., In re Polaroid Corp., No. Civ.A. 02-1353 JJF, 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004) ("If a party fails to establish one of the four prongs, a court may deny the requested stay."); In re Tallygenicom, L.P., Bankr. No. 09-10266 (CSS), 2009 WL 734680, at *1 (D. Del. Mar 20, 2009) ("A court may deny a motion for a stay if the movant fails to make a showing on any of the above factors." (quoting Genesis, 367 B.R. at 516)).  In this case, the Plaintiffs have failed to carry their burden on all four factors.

**(a).    The Plaintiffs Have Not Made a Strong Showing They Are Likely to Succeed on the Merits of Their Appeal**

12.    To show a likelihood of success on the merits, a movant must have "a substantial case, or a strong case on appeal". In re Polaroid Corp., No. Civ.A. 02-1353 JJF, 2004 WL 253477, at *1 (D. Del. Feb. 9, 2004) (quoting In re The Columbia Gas Sys., Inc., 1992 U.S. Dist. LEXIS 3253 at *4 (D. Del. March 10, 1992)).  The Plaintiffs fail this test because (i) the relief granted in the Final Order is customary and appropriate, (ii) the factual basis for the Final Order is sound and (iii) their argument misapplies Timbers.

**(i)    The Adequate Protection Payments Are Appropriate**

13.    The Plaintiffs have not made a strong showing that the Bankruptcy Court erred in approving the agreement to permit the use of Cash Collateral and the provision of adequate protection on the terms and conditions set forth in the Final Order.  To the contrary, the relief provided was appropriate and customary.

14.    Adequate protection is not merely a matter of discretion.  It is a right conferred by the Fifth Amendment of the United States Constitution and the Bankruptcy Code. See LNC Inv., Inc. v. First Fidelity Bank, 247 B.R. 38, 44 (S.D.N.Y. 2000) (citing Wright v.

Union Cent. Life Ins. Col, 311 U.S. 273 (1940); see also United States. v. Whiting Pools, Inc., 462 U.S. 198, 207 (1983).  As the leading bankruptcy treatise states:

> An entity is entitled to adequate protection as a matter of right, not merely as a matter of discretion, when the entity is stayed from enforcing its interest [and] when the estate proposes to use, sell or lease property in which the entity has an interest ....

3 Collier on Bankruptcy ¶ 361.02 (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2009). "Whether protection is adequate depends directly on how effectively it compensates the secured creditor for loss of value." In re Swedeland Dev. Group, 16 F.3d 552, 564 (3d Cir. 1994); see also In re Price, 370 F.3d 362, 373 (3d Cir. 2004) ("A secured creditor retains the right to "adequate protection" of its collateral, which means it is entitled to have the value of its collateral maintained at all times ...."). The Bankruptcy Code does not expressly define adequate protection, but states that it may be provided by, among other things, periodic cash payments. 11 U.S.C. § 361. If adequate protection payments are granted to a secured creditor that ultimately does not suffer any diminution of its collateral, such payments may be recharacterized as repayments of principal. "[P]ayments intended to provide adequate protection should be credited toward reducing the secured portion of the creditor's total claim where there is no depreciation in the value of the collateral." In re Weinstein, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998); see also In re Delta Transitional Home, 399 B.R. 654, 660 (Bankr. E.D. Ark. 2009) ("No evidence was offered by the Bank of any depreciation of its collateral .... Therefore, all adequate protection payments must be applied to the secured portion of Bank's claim ....").

15.    The Final Order was drafted to be flexible in light of a common challenge facing bankruptcy courts early in a case. "Ordinarily, the matter of adequate protection is determined at or near the inception of a bankruptcy case. By contrast, the determination of a creditor's secured status, pursuant to 11 U.S.C. § 506, comes at or near the conclusion of a

bankruptcy case." In re Delta Res., Inc., 54 F.3d 722, 729-30 (11th Cir. 1995). To address this uncertainty, the Final Order contains flexible parameters that assure compliance with the Bankruptcy Code. The Final Order expressly limits the scope of adequate protection provided therein to a sum "equal in amount to the aggregate diminution in the value of the [Prepetition Lenders'] interests in the prepetition Collateral". Final Order ¶ 10. In the event no such diminution in value occurs, "[t]he rights of any party to assert that any Adequate Protection Payments authorized hereunder should be recharacterized as a payment on account of the principal amount of the Prepetition Obligations outstanding as of the Petition Date are hereby fully preserved". Final Order ¶ 10(c). The Bankruptcy Court concluded that the Final Order was appropriate because it ensured compliance with the Bankruptcy Code regardless of whether the Prepetition Lenders ultimately turned out to be over- or undersecured. "I'm satisfied right now that it is subject to recharacterization and this is not a hearing on valuation to determine whether or not the lender is or is not under secured .... I'm satisfied that the prospect or the option of recharacterization allows sufficient flexibility". 10/14/09 Hearing Tr. 205:5-13.

16.     The remedy approved by the Bankruptcy Court is not unusual. Numerous other cases have granted the same relief in orders authorizing the use of cash collateral. See, e.g., In re MagnaChip Semiconductor Fin. Co. LLC, Case No. 09-12008 (PJW) (Bankr. D. Del. July 13, 2009) (granting interest payments at prepetition rates, subject to recharacterization as principal, as adequate protection pursuant to an order authorizing use of cash collateral); In re R.H. Donnelley Corp., No. 09-11833 (KG) (Bankr. D. Del. June 25, 2009) (same); In re Spansion Inc., No. 09-10690 (Bankr. D. Del. May 15, 2009) (same). Given the flexibility of the Final Order to deal with various valuation scenarios and the customary nature of the provision at issue, the Plaintiffs cannot show an abuse of discretion on appeal.

### (ii)    The Finding that Adequate Protection Was Appropriate Was Not Clearly Erroneous

17.    The Plaintiffs failed to present sufficient evidence to challenge the Bankruptcy Court's findings with respect to adequate protection.  "[A]dequate protection determinations made by a bankruptcy court are questions of fact subject to the clearly erroneous standard of review." In re Briggs Transp. Co., 780 F.2d 1339, 1350 (8th Cir. 1985); see also In re Johnson, No. 06-2110, 2006 WL 2348889, at *2 (3d Cir. Aug. 15, 2006) (concluding that rejection of a proposal that failed to provide adequate protection was not clearly erroneous); In re Swedeland, 16 F.3d at 559 ("[W]e therefore review the bankruptcy court's findings with respect to whether [secured lender] had adequate protection … under the clearly erroneous standard."). The Bankruptcy Court granted adequate protection to the Prepetition Lenders on the basis of a factual showing that their Collateral was at risk of decreasing in value.  The Plaintiffs dispute the Debtors' presentation of the facts.

18.    The Plaintiffs argued that there will be no diminution in the value of the Prepetition Lenders' collateral by focusing only on the Debtors' estimated cash balances for the first 13 weeks of the case and ignoring all other collateral and all other time periods.  Their analysis fails to account for all non-cash collateral, the seasonality of the Debtors' businesses, the distortion caused by a one-time insurance rebate of approximately $10 million in the fourth quarter and the likely duration of the Chapter 11 cases, which will last well beyond 13 weeks due to FCC approvals that must be obtained before a plan can be consummated.  McEachen Aff. ¶¶ 17-18; 10/14/09 Hearing Tr. 58:10-59:18.  Indeed, the Debtors' CFO's testimony directly contradicted the Plaintiffs' cash analysis.  10/14/09 Hearing Tr. 56:13-59:18.

19.    The record refutes the Plaintiffs' statement that there is no evidence that the Collateral is decreasing in value.  The Debtors' CFO has testified without contradiction that

the Debtors' cash position is declining, commenting that the company is "burning through cash". 10/14/09 Tr. 58:9. The Debtors presented ample evidence to the Bankruptcy Court that the Adequate Protection Payments were warranted. The Plaintiffs' arguments fail to provide any indication that this finding was clearly erroneous.

### (iii)    The Plaintiffs' Analysis of Timbers Is Flawed

20.     The Plaintiffs, relying on Timbers and its progeny, argue that the Bankruptcy Court's decision was wrong because the Prepetition Lenders are undersecured and therefore not entitled to the payment of interest. However, it would have been premature for the Bankruptcy Court to determine whether the Prepetition Lenders were undersecured when considering the Final Order, see 10/14/09 Hearing Tr. 205:6-8 ("[T]his is not a hearing on valuation to determine whether or not the lender is or is not under secured."), and even if such a determination were proper, it would not be relevant to consideration of the Final Order.

21.     The Bankruptcy Code explicitly permits any secured creditor—including an undersecured creditor—to receive periodic adequate protection payments against the risk of diminution in value of collateral. 11 U.S.C. § 361(1); In re Price, 370 F.3d at 373 ("A secured creditor retains the right to 'adequate protection' of its collateral, which means it is entitled to have the value of its collateral maintained at all times …."). The record shows that the value of the Prepetition Lenders' collateral is at risk of diminution. Nothing in Timbers curtails the Prepetition Lenders' entitlement under the Bankruptcy Code to periodic payments to protect them against this potential loss.

22.     In Timbers, the Supreme Court ruled on "whether undersecured creditors are entitled to compensation under 11 U.S.C. § 362(d)(1) for the delay caused by the automatic stay in foreclosing on their collateral". Timbers, 484 U.S. at 369 (emphasis added). The Court held that an undersecured creditor is not entitled to such compensation. In this case, the

Prepetition Lenders are not seeking compensation for the delay caused by the automatic stay.

The Debtors and the Prepetition Lenders entered into an agreement for use of Cash Collateral,

one term of which includes the requirement that the Debtors make periodic cash payments, equal

to interest and fees, to protect the Prepetition Lenders against the potential diminution in value of

their collateral, subject to the right of all parties to seek to recharacterize such payments as

principal repayments at the end of these Chapter 11 cases.

23.     None of the arguments presented by the Plaintiffs in support of the merits

of their appeal withstands scrutiny.  Accordingly, the Plaintiffs have not made the strong

showing required to support a stay pending appeal.

**(b).     <u>The Plaintiffs Have Not Shown A Risk of Irreparable Harm</u>**

24.     On a motion for a stay pending appeal, "economic loss alone is not

irreparable harm." <u>In re Frascella Enterprises, Inc.</u>, 388 B.R. 619, 627 (Bankr. E.D. Pa. 2008);

<u>see also</u> <u>In re ANC Rental Corp.</u>, No. 01-11220(MFW), 2002 WL 1058196, at *2 (D. Del. May

22, 2002) (no irreparable harm where injury is financial and quantifiable); <u>In re Shelly's, Inc.</u>, 87

B.R. 931, 935 (Bankr. S.D. Ohio 1988) (same).  The Plaintiffs assert that the postpetition

payments to the Prepetition Lenders will leave inadequate funds for unsecured creditors.  Even if

one accepts this argument at face value, it describes a purely financial harm that does not justify

the interruption of the Prepetition Lenders' adequate protection payments.

25.     Further, absence of a stay would not cause unsecured creditors any

financial harm.  The Adequate Protection Payments come from the Collateral securing the

Prepetition Lenders' claims, not from assets to which the Plaintiffs would otherwise be entitled.

The payments will not reduce the Plaintiffs' potential recovery but will instead be applied to the

Prepetition Lenders' claims, whether for principal or interest, depending on whether the

Prepetition Lenders are undersecured. <u>See</u> <u>In re Stearns Bldg.</u>, No. 98-1257, 1998 WL 661071,

at *5 (6th Cir. Sep. 3, 1998) ("Timbers provides no bar to ... [a secured creditor] simply asking

for a surrender of its actual collateral."); In re Swedeland, 16 F.3d at 565 (noting that a secured

lender is already entitled to its cash collateral, regardless of the adequate protection granted by

the bankruptcy court).

      26.     The Plaintiffs cite three cases for the proposition that the dissipation of

estate funds can cause irreparable harm.  The cases are distinguishable.  First, two of the cases,

In re Focus Media, 387 F.3d 1077 (9th Cir. 2004), and In re Netia Holdings, 278 B.R. 344

(Bankr. S.D.N.Y. 2002), considered preliminary injunctions, not stays pending appeal.  While

the tests for these remedies are similar, their procedural postures require different balancings.

Treating them the same:

> ignores the procedural posture of a Rule 8005 stay where the movant is appealing
> a bankruptcy court's final determination on the merits.  A "sliding scale"
> approach, which often results in disproportionately weighting the "irreparable
> harm" prong, is appropriate for preliminary injunctions because a court deals with
> the dispute on first impressions, relies on a less-than-developed factual and legal
> record, and will ultimately revisit the issue down the road. In contrast, where–as
> here–a court has taken extensive evidence and briefing and issued a determination
> on the merits, an interest in finality arises."

In re North Plaza, LLC, 395 B.R. 113, 120 (S.D. Cal. 2008).

      27.     Second, the facts of all three cases justified a departure from the general

rule that economic loss does not constitute irreparable harm, which still applies here.  Netia

Holdings was a case under section 304 of the Bankruptcy Code (repealed in 2005) for Polish

corporations reorganizing under Polish laws, brought to protect assets in the United States by

imposition of a stay akin to the automatic stay.  278 B.R. at 346.  Because the foreign proceeding

did not grant protections in the United States such as would be imposed in a domestic

proceeding, the court gave greater consideration to the dissipation of estate property and created

an exception to the general irreparable harm standard.  Id. at 352.  Focus Media upheld a

preliminary injunction against a debtor's sole shareholder who looted the company on the eve of bankruptcy, preventing additional estate funds disappearing before distributions to the shareholder could be avoided as fraudulent transfers. 387 F.3d at 1084-87.  Unlike this case, Focus Media addressed a deliberate attempt to frustrate the bankruptcy process by fraudulently sequestering estate funds (rather than court-authorized adequate protection payments) by enjoining use or concealment of the funds by the shareholder, who lived outside the country and was likely entitled to no recovery in the case.  Id.  In re Finova Group, Inc., Bankruptcy No. 01-698-PJW, 2007 WL 3238764 (D. Del. Oct. 31, 2007), involved liquidating debtors, where distribution entails greater risk to a creditor, because there is no longer a going concern producing future cash flows.  Unlike in Finova, the payments at issue in this case are funded through the Debtors' continuing cash flows and represent only a portion of the recovery to which the Prepetition Lenders are entitled.

28.     The Plaintiffs assert that they will suffer irreparable harm if the stay is not granted because their appeal will be rendered moot.  However, "[i]t is well settled that an appeal being rendered moot does not itself constitute irreparable harm".  In Re Trans World Airlines, Inc., No. 01-0056(PJW), 2001 WL 1820325, at *10 (Bankr. D. Del. Mar. 27, 2001) (quoting In re 203 N. LaSalle St. Partnership, 190 B.R. 595, 598 (N.D. Ill. 1995)); see also Westinghouse, 949 F.2d at 658 (concluding that although the decision on the stay may be dispositive of the appeal, this is not sufficient to establish irreparable harm); In re Global Home Prods., LLC, No. 06-10340-KG,  2006 WL 2381918, at *1 (D. Del. Aug. 17, 2006); In re Frascella, 388 B.R. at 627 ("[A] majority of courts find the potential of mootness insufficient to demonstrate irreparable harm.").   In re Adelphia Commc'ns Corp., 361 B.R. 337 (S.D.N.Y. 2007) and its predecessor cases, which Plaintiffs cite, do not reflect Third Circuit law.   In concluding that

mootness did not constitute irreparable harm, the <u>Frascella</u> court noted "[Adelphia] relies solely upon a handful of cases limited to the Second Circuit, that are clearly not binding on this Court and contrary to its prior holdings."  <u>In re Frascella</u>, 388 B.R. at 627 n.11.

29.    Even if the Plaintiffs' statement of the law were correct, absence of a stay would not render their appeal moot.  If this Court determines that the provision was an improper part of a cash collateral agreement and reverses, the Final Order would not bar the Bankruptcy Court from fashioning an appropriate remedy.  11/02/09 Tr. 35:21-23.

**(c).    <u>Granting the Stay Would Harm Other Interested Parties</u>**

30.    The Plaintiffs have not shown that a stay would not harm other parties. Where payments to a secured creditor are stayed pending appeal, the creditor is likely to suffer financial injury when it is not adequately protected.  <u>See</u> <u>In re Frye</u>, No. 05-10004, 2005 WL 1285833, at *2 (Bankr. D. Vt. May 27, 2005).  The financial harm to a creditor who is forced to await the outcome of an appeal can include the costs of protracted litigation and the adverse consequences of the delay.  <u>See</u> <u>id.</u>

31.    There is ample evidence that the Prepetition Collateral and the Cash Collateral in particular are at risk of diminishing in value during the Chapter 11 cases.  The Bankruptcy Court has agreed, finding that the Prepetition Lenders are entitled to adequate protection equal to the diminution in the value of their interests.  The Plaintiffs did not produce any contrary evidence in the Bankruptcy Court.   Nor have the Plaintiffs shown that the Prepetition Lenders would be adequately protected without the Adequate Protection Payments. The Prepetition Lenders therefore would be harmed if they are denied the Adequate Protection Payments pending appeal.

32.    When the value of the estate is diminishing, interested parties may be harmed simply by maintaining the status quo pending appeal.  <u>See, e.g.</u>, <u>In re Doctors Hospital of</u>

Hyde Park, Inc., 376 B.R. 242 (Bankr. N.D. Ill. 2007) (preserving the status quo of prolonged litigation harms creditors because contested settlement funds are invested in safest investments that receive the smallest rate of return); In re VVF Commc'ns Corp., 41 B.R. 546, 555 (Bankr. D.D.C. 1984) ("Every day of continued delay results in further substantial interest accrual and further diminution of the value of the estate."). Courts have also noted that interested parties may be harmed where a stay would derail a debtor's settlement negotiations and endanger the consummation of a plan. See In re Akron Thermal, Ltd. P'ship, No. 5:09 MC 10, 2009 WL 414669, at *13 (N.D. Ohio Feb. 19, 2009) (both the debtor and its creditors would be adversely affected by an unraveling of the proposed plan); see also In re Richmond Metal Finishers, Inc., 36 B.R. 270, 273 (Bankr. E.D. 1984) (stay would be the "death knell" of reorganization efforts and would harm unsecured creditors, who would receive less in liquidation). Here, depriving the Prepetition Lenders of their Adequate Protection Payments would risk upsetting the balance of expectations on which the cash collateral agreement is based and could disrupt the negotiated consensual arrangements between the Debtors and the Prepetition Lenders, potentially causing delays that adversely affect all creditors.

### (d). Denying the Motion is in the Public Interest

33.    The Plaintiffs have not shown that a stay is in the public interest. The public interest is served by parties-in-interest entering into agreements and settlements, which "generally result in less litigation, lower costs for all parties, more rapid resolution of disputes, and for greater opportunity for the debtor to retain his or her property and the lender to get paid." Frye, 2005 WL 1285833, at *3. When an agreement is a reorganization plan, its implementation serves the public interest by providing creditors with a greater recovery (versus a potential liquidation) and enhancing the debtor's ability to continue to provide its services to its customers and the community. Akron, 414 B.R. at 208-09.

34.     The Plaintiffs claim that the public interest is advanced by giving "the Debtors an opportunity to freely use the funds allocated for the Lender Postpetition Payments in a plan of reorganization". Motion at 23. However, these payments are a necessary component of the Debtors' cash collateral agreement with the Prepetition Lenders that permits the Debtors to continue to operate their businesses with minimal disruption for the benefit of all of the Debtors' constituencies, including their customers, vendors, suppliers and employees. Further, such funds constitute the Prepetition Lenders' Cash Collateral and would not be available to fund a distribution to general unsecured creditors under a Chapter 11 plan absent the Prepetition Lenders' consent. Continuing on the path agreed to by the Debtors and the Prepetition Lenders avoids a costly and distracting litigation over the non-consensual use of Cash Collateral and therefore is in the public interest.

35.     The Plaintiffs claim a stay is in the public interest because paragraph 17(c) of the Final Order would render the effect of paragraph 10(c) irreversible. As already noted, nothing in the language in the Final Order prevents a court from fashioning a remedy if the Adequate Protection Payments were deemed inappropriate. The Plaintiffs also suggest that it would simply appear unfair to allow secured creditors to recover ahead of unsecured creditors. But creditors take collateral for exactly that reason—to recover ahead of unsecured creditors. This result is consistent with the contractual arrangements agreed to by the parties and the priority scheme under the Bankruptcy Code.

**C.      A Stay of Only Paragraph 10(c) Would Unfairly Modify an Approved Agreement**

36.     Even if the Plaintiffs have satisfied their burden, the Court should still deny the stay. The Plaintiffs seek a stay of a single provision in the Final Order. This approach seeks to minimize the perceived impact of the requested relief. But it ignores the contractual basis for the Final Order.

> It is a general rule that an order, judgment, or decree, entered by the court upon the consent of the parties litigant, being in the nature of a contract to which the court has given its formal approval, cannot subsequently be opened, changed, or set aside without the assent of the parties, in the absence of fraud, mutual mistake, or actual absence of consent …

H.D. Harding, Power to Open or Modify "Consent" Judgment, 139 A.L.R. 421 (collecting cases); see also In re Sharon Steel Corp., 918 F.2d 434, 437 (3d Cir. 1990) ("When, as in the present case, a district court conditions the grant of a motion upon mutual consent, the practical effect is to turn the motion into a consent decree or judgment."). "A court should not later modify the [consent] decree by interposing terms not agreed to by the parties or not included in the language of the decree." Harris v. City of Philadelphia, 137 F.3d 209, 212 (3d Cir. 1998); 49 C.J.S. Judgments § 502 ("As a general rule, a consent judgment may not be amended, modified, or corrected in any essential particular except with the consent of the parties thereto."). The Plaintiffs suggest that the Court should exercise, in essence, a line-item veto. Because the Final Order approved an agreement between the Debtors and the Prepetition Lenders, a stay of only a portion of the underlying agreement would unfairly modify the agreement and impose terms not agreed to by the parties.

**D.      If a Stay Is Granted, the Plaintiffs Must Post a Supersedeas Bond**

37.      If the Court grants a stay pending appeal, it should require the Plaintiffs to post a supersedeas bond in an amount equal to the interest and fees that would otherwise be paid during the pendency of the appeal. "The decision regarding whether or not to require a bond under Rule 8005 is discretionary …[and] the bond requirement should not be eliminated or reduced unless doing so 'does not unduly endanger the judgment creditor's interest in ultimate recovery'". In re Weinhold, 389 B.R. 783, 787 (Bankr. M.D. Fla. 2008) (quoting de la Fuente v. DCI Telecommunications Inc., 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003); see also In re Adelphia, 361 B.R. at 350; In re WestPoint Stevens, Inc., Lead Docket No. 06 Civ.

4128(LTS)(JCF), 2007 WL 1346616, at *7 (S.D.N.Y. May 9, 2007).  The standard for assessing whether a supersedeas bond is appropriate is virtually identical to that used in determining whether a secured creditor is entitled to adequate protection, with courts considering "whether the bond is necessary to protect against any reduction in value of the subject property pending appeal, and to 'secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal'".  In re Weinhold, 389 B.R. at 787 (quoting In re Adelphia, 361 B.R. at 350).  The Bankruptcy Court has already determined the Prepetition Lenders are entitled to the Adequate Protection Payments to compensate for any reduction in value of the Collateral.  The same reasoning dictates that the Plaintiffs must post a bond in the amount of those payments if they wish to deprive the Prepetition Lenders of such payments pending the appeal.  The Court should affix a reasonable amount to such a bond requirement, based on the amount of the payments at issue and the likely duration of the stay.

## CONCLUSION

38.     For the foregoing reasons, the Prepetition Agent requests that the Court

deny the Motion.


Dated: November 12, 2009            Respectfully Submitted,
Wilmington, Delaware

Richard W. Riley (No. 4052)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 657-4900
Facsimile:  (302) 657-4901
RWRiley@duanemorris.com

- and -

Richard Levin (*Pro Hac Vice* to be filed)
Robert H. Trust (*Pro Hac Vice* to be filed)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
rlevin@cravath.com
rtrust@cravath.com

Counsel for JPMorgan Chase Bank, N.A.

## CERTIFICATE OF SERVICE

I hereby certified that on November 12, 2009, I caused a true and correct copy of the foregoing Opposition Of The Prepetition Agent To The Emergency Motion Of The Gonzalez Class Action Plaintiffs For A Limited Stay Pending Appeal Of The Final Order (I) Authorizing Use Of Prepetition Lenders' Cash Collateral Under 11 U.S.C. § 363 And (II) Granting Adequate Protection Under 11 U.S.C. §§ 361, 362, And 363 to be served upon the following counsel by the manner indicated:

*VIA* **HAND DELIVERY**
Michael R. Nestor, Esq.
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
PO Box 391
Wilmington, DE 19899

*VIA* **HAND DELIVERY**
David Buchbinder
Office of the United States Trustee
844 King Street, Suite 2313
Lock Box 35
Wilmington, DE 19801

*VIA* **HAND DELIVERY**
Bruce Grohsgal, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
PO Box 8705
Wilmington, DE 19899

*VIA* **HAND DELIVERY**
Jeffrey M. Schlerf
Fox Rothschild LLP
Seth A. Niederman
Citizens Bank Center
919 North Market Street, Suite 1600
Wilmington, Delaware 19801

*VIA* **OVERNIGHT MAIL**
Robert Klyman, Esq.
Latham & Watkins
335 South Grand Avenue
Russell F. Sauer, Esq.
Los Angeles, CA 90071

*VIA* **OVERNIGHT MAIL**
Alan Kornfeld, Esq.
Gillian N. Brown, Esq.
Pachulski, Stang, Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067

*VIA* **OVERNIGHT MAIL**
Robert J. Feinstein, Esq.
David A. Abadir, Esq.
Beth Levine, Esq.
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 36th Floor
New York, NY 10017

*VIA* **OVERNIGHT MAIL**
Craig H. Averch
Roberto J. Kampfner
WHITE & CASE LLP
633 West 5th Street, Suite 1900
Los Angeles, California 90071

Richard W. Riley (Del. I.D. #4052)